## STATE *v.* JEAN GEZE.

Information for selling spirituous liquors to slaves without consent of masters, &c. *Held:* If the owner of the slave, or person having him in charge, sent the slave to buy, or receive the spirituous liquor from the defendant, for the purpose of inducing the defendant to commit the offence charged in the information—then the act committed was done with the assent of the owner, or person having the slave in charge—and the material ingredient of the offence is wanting.

APPEAL from the District Court, Fourth District, Parish of Ascension. *Duffel*, J. *Attorney General*, for the State. *Illsley*, for defendant.

DUNBAR, J. This is a prosecution, by information against defendant, for unlawfully selling spirituous and intoxicating liquors to a slave, without the consent and authorization of his master, or person having charge of said slave. The defendant was tried and found guilty by a jury, and condemned by the Court to a fine of five hundred dollars, with the costs of prosecution, and imprisonment for thirty days, unless the fine and costs were paid.

Upon the trial of this case, the counsel of the defendant moved the Court to instruct the Jury, if they should be of opinion, from the testimony adduced, that the owner of the slave, or the person having charge of him, sent the slave to buy, or receive the spirituous liquors from the accused, for the purpose of entrapping him and inducing him to commit the act charged, that the act so committed being done with the knowledge and assent of the owner, or person having charge of the slave, the material ingredient of the offence would be wanting, and that in

such case no offence was committed, as charged. The Court having refused to charge, as thus requested, the defendant took his bill of exceptions.

We are well aware of the solicitude which has been exhibited by our Legislature for a long series of years, in the passage of numerous Acts to prohibit the selling of intoxicating liquors to slaves, and have considered the subject with every disposition, if possible, to construe the Statute of 1832, under which the information in this case has been framed, so as to advance the remedy and suppress the mischief; but we have been unable to agree with the District Judge in his refusal to charge the Jury as requested.

The Act of 1832, with the several amendments thereto, imposes a fine " upon any person who shall give, sell or deliver, or cause to be sold, &c., to the slave of any other person, without the *consent and authorization* of the master or owner, or person having charge of such slave, any spirituous or intoxicating liquors, &c." Revised Statutes, p. 555. It is clear that the material ingredient in the offence under this Statute is " the giving, selling, &c., without the *consent and authorization* of the owner, or person having charge of such slave." If then the owner or person having charge of the slave sent him to the defendant for the purpose of *inducing* him to sell or give the spirituous liquors to the slave, with what propriety can it be said that the spirituous liquors were given or sold without the consent of the owner or person having charge of the slave?

It has however been contended by the *Attorney General*, that the Act of June 7, 1806, imposes a fine upon any person who shall sell intoxicating liquor to a slave without a permission *in writing* from the master. Bullard and Curry's Digest, 51. This is very true; but the defendant has not been informed against under that Statute, and if he had been, the fine imposed by it would not have been sufficient to give this Court jurisdiction. Unfortunately perhaps for the good of the community, this wise provision of the Act of 1806, requiring the permission of the master in writing, has been omitted in the Act of 1832, under which the defendant is now prosecuted. This case bears a striking analogy to that of larceny. One of the material ingredients in the offence of larceny is, that the taking of the goods should be without the *consent of the owner, invito domino.* In Eggington's case, reported in Russell on Crimes, 2 vol. 105, this material ingredient in the offence of larceny underwent great consideration, as the author tells us. The prisoners having been convicted, the case was argued before the twelve judges, a majority of whom held that the prisoners were guilty of the larceny under the following circumstances. It appeared that the prisoners, intending to rob a manufactory at Soho, near Birmingham, of which *Mr. Boulton* was the principal proprietor, applied to a man named *Phillips*, who was employed as servant and watchman to the manufactory, to assist them in the robbery. *Phillips* assented to their proposal, but immediately gave information to *Mr. Boulton*, who told him to carry on the business, with a view to the detection of the thieves, which the servant accordingly did. The conviction of the prisoners was founded upon the consideration that although *Mr. Boulton* had permitted or suffered the meditated offence to be committed, he had not done anything *originally to induce it;* that his object being to detect the prisoners, he only gave them a greater facility to commit the larceny than they otherwise might have had; and that this could no more be considered as an assent than if a man, knowing of the intent of thieves to break into his house, were not to secure it with the usual number of bolts. From this report of the case it is to be inferred that if *Mr. Boulton* had done anything *originally to induce* the commission of the theft, the prisoners would have been acquitted. So we think, if

STATE
v.
GEZE.

the owner of the slave, or the person having him in charge, sent the slave to buy or receive the spirituous liquors from the defendant, for the purpose of *inducing him* to commit the offence charged in the information, that the act so committed being done with the assent of the owner or person having charge of the slave, the material ingredient of the offence would be wanting, and that in such case no offence was committed, as charged.

It is therefore ordered, that the judgment of the District Court be avoided and reversed, that a new trial be awarded the defendant, with instructions to the DistrictJudge to charge the Jury in conformity to the principles of this opinion and decree.